IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE WESTFALL, Plaintiff | : | CIVIL ACTION |
| v. | : | No. 06-4320 |
| | : | |
| VANGUARD GROUP, INC., et al. Defendants | : | |
| | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.** **June 8, 2007**

The Vanguard Group, Inc., and an employee, Frances O'Donnell, ask this Court to dismiss an age and disability discrimination suit brought by Joyce Westfall, an account administrator. Westfall contends disparate treatment, discrimination, and failure to provide reasonable accommodation for her disability created an intolerable work environment leading to her constructive discharge. Because I find the allegations are not factually supported, I will grant summary judgment in favor of Vanguard and O'Donnell.

**FACTS**[1]

Westfall, 56, worked for Vanguard for ten years from 1993 to 2003. In 1993, Westfall was diagnosed with fibromyalgia, a disorder causing pain and fatigue throughout the body. She did not inform anyone at Vanguard until 1995 when she missed five work days in a six-month span. Since her diagnosis, Westfall has experienced occasional flare-ups in which the pain can be debilitating. She testified, however, the disorder was "under control" from 2002 to 2003.

In January 2003, Westfall injured her right arm and hand in a skiing accident resulting in two

[1]For the purpose of this motion, the court assumes all of the facts in the light most favorable to the plaintiff. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

months' leave from work followed by six weeks of half days.  She alleges while on leave, her clients were handled by younger, less experienced workers.  Prior to her 2003 accident, Westfall requested her workload be reduced from five to three clients.  Vanguard granted her request after she returned from leave.  She also requested a more comfortable chair and modified hours, both of which Vanguard granted.  In her mid-year performance review of July 29, 2003, O'Donnell rated Westfall poorly for an inability to handle her reduced client-load, a failure to improve her technological skills, and a need for support from less tenured account administrators.[2]  In a conversation with O'Donnell on July 30, 2003, Westfall stated she felt her disability was being used against her and the disability should have been noted in her evaluation.  Pl.'s Reply Ex. C.  After this evaluation and conversation, Westfall resigned on August 5, 2003.

Westfall filed suit in this Court under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34 (2007), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951 *et seq.*

**DISCUSSION**

A motion for summary judgment will only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment bears the initial  burden of

---

[2]The evaluation read: "Joy should be further along with her development, participating in projects, meeting all deadlines with minimal help, and have a better understanding of services that can be offered to her clients," including:
> gaining more knowledge of custom reporting, pro-actively calling meetings to discuss issues with the [Relationship Managers], eliminating unnecessary work and relieving administrative burdens for herself and her clients.  Joy should work on less dependence from co-workers to achieve results that are considered to be routine for an [Account Administrator] with her tenure

Pl.'s Reply Ex. E.

proving no genuine issues of material fact are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering a motion for summary judgment, a court does not resolve factual disputes or make credibility determinations and must view the facts and inferences in the light most favorable to the nonmoving party. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert denied*, 507 U.S. 912 (1993). Where the non-moving party's evidence contradicts the movant's, the non-movant's evidence must be taken as true. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). Once the moving party has carried its initial burden, the nonmoving party must then "come forward with specific facts showing there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)). A motion for summary judgment will not be denied because of the mere existence of some evidence in support of the nonmoving party. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). The party opposing the motion must present sufficient evidence such that a reasonable jury could return a verdict for it on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party cannot rest on its allegations without "any significant probative evidence tending to support the complaint." *Id.*; *see also Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (stating a non-moving party must "adduce more than a scintilla of evidence in its favor . . . and cannot simply reassert factually unsupported allegations contained in its pleadings").

The PHRA and the ADA are textually the same in relevant respects, and Pennsylvania courts generally treat claims brought under both acts coextensively. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). The ADA prohibits "discrimination against a qualified individual with a disability because of the disability of such individual in regard to . . . terms conditions and privileges

of employment." 42 U.S.C. § 12112(a) (2007). To make out a prima facie case of disability discrimination under the ADA, Westfall must present evidence she (1) is a qualified individual with a disability as defined by the ADA, (2) is qualified to perform the essential functions of her job, and (3) has suffered an adverse employment decision as a result of her disability. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998). In its motion for summary judgment, Vanguard argues Westfall has failed to show she is disabled within the meaning of the ADA. To establish she is disabled, Westfall must prove she (1) suffers from an impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such impairment. *See* 42 U.S.C. § 12102(2). Westfall alleges her fibromyalgia when active limits her ability to engage in all major life activities.

For the purposes of this motion, the Court assumes Westfall suffers from the physical impairment alleged.[3] A physical impairment alone, however, is insufficient to qualify as a disability under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (finding the diagnosis of a medical condition is insufficient to establish a disability under the ADA). The physical impairment must substantially limit a major life activity. 29 C.F.R. app. § 1630.2(j) (2007) (stating "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of the impairment on the life of the individual"). Though the ADA does not define "major life activity," definitions in EEOC regulations provide guidance. *Deane*, 142 F.3d at 143 n.4. The regulations define "major

[3]While EEOC regulations do not list specific qualifying conditions, they do define physical impairment as "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2007).

life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Under the regulations, the record must contain evidence the major life activity was "substantially limited." The EEOC regulations define "substantially limited" as (1) unable to perform a major life activity the average person in the general population can perform, or (2) significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. 1630.2(j)(1).[4] "Determining . . . whether a person is disabled is an individualized inquiry, particular to the facts of each case." *Sutton v. United Airlines*, 527 U.S. 471, 483 (1999). "[This] individualized assessment . . . is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Toyota*, 534 U.S. at 199.

Even though Westfall suffered from fibromyalgia, she produced no evidence she continued to feel its effects in a manner substantially limiting a major life activity when she resigned in 2003. Westfall submitted no medical reports or doctors' notes of an initial diagnosis or of her continued impairment. The only evidence on the record of her impairment is her own testimony of pain occasionally interrupting her sleep and causing her to move around for comfort. *Cf. Toyota*, 534 U.S. at 197 (finding "the word 'substantial' . . . clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities"). Westfall acknowledged her fibromyalgia was "under control" after she returned from leave following her

---

[4] In addition to the definition above, the regulations state when evaluating whether someone is substantially limited in a major life activity, the following factors should be considered: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

skiing accident in 2003,[5] and "there wasn't anything [she] couldn't do" within the scope of her job responsibilities.  Defs.' Mot. Ex. 1 at 151:4-16.  Westfall has presented no probative evidence from which a jury could reasonably conclude Westfall's impairment substantially limited any of her major life activities.

Vanguard contends Westfall cannot demonstrate it denied any request for reasonable accommodation.  The ADA requires an employer to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."  42 U.S.C. § 12112(b)(5)(A) (2007).  Vanguard accommodated Westfall's requests, including a more comfortable chair for her desk and a modified schedule.  Westfall alleges Vanguard failed to accommodate her alleged disability because her mid-year review highlighted areas for improvement and her supervisor was unmoved during a subsequent conversation concerning the review.  The ADA and the applicable case law state employers are not required to alter job performance requirements for disabled workers.[6]  Considering Westfall is not disabled within the meaning of the act and there is no other evidence of a failure to accommodate her impairment, her claim of failure to accommodate cannot

---

[5]That Westfall was able to go skiing at all speaks to the fact that her fibromyalgia did not substantially limit any of her major life activities.  *See e.g. Olson v. General Elec. Astrospace*, 101 F.3d 947, 952-53 (3d Cir. 1996) (finding plaintiff who worked, went to school full-time, and regularly partook in recreational activities failed to make a prima facie case he was disabled.)

[6]In its Technical Assistance Manual it issued under the ADA, the EEOC stated, "an employer should not give employees with disabilities 'special treatment.' They should not be evaluated on a lower standard or disciplined less severely than any other employee.  This is not equal opportunity."  EEOC Man. (BNA) (Special Supplement): A Technical Assistance on the Employment Provisions (Title 1) of the Americans with Disabilities Act, DLR No. 18, S-33 (January 28, 1992); *see Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995) (the ADA does not require employers to alter job performance requirements); *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1219 n.3 (8th Cir. 1999), *cert. denied*, 528 U.S. 821 (1999) (firing an employee because his job-performance consequences of a disability, rather than the disability itself, is not actionable under the ADA).

succeed.

In Pennsylvania, the same legal standards and burdens of proof govern age discrimination claims under both the ADEA and PHRA and it is therefore appropriate to address them collectively. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005).  Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1) (2007).  In cases brought under the ADEA or the PHRA, the age of the plaintiff must have played a role in the decision-making process of the employer and had a determinative influence on the outcome of that process. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000); *Monaco v. American General Assur. Co.*, 359 F.3d 296, 299-300 (3d Cir. 2004).  Whether age actually motivated an employer's decision determines liability under the ADEA.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

In its motion for summary judgment, Vanguard contends Westfall failed to meet the initial burden of establishing a prima facie case under a *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Under *McDonnell Douglas*, Westfall must demonstrate (1) she was a member of a protected class (over the age of 40), (2) she was qualified for the job, (3) she suffered an adverse employment decision, and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination.[7]  *Potence v.*

---

[7]Under the *McDonnell Douglas* burden shifting test, after the plaintiff establishes a prima facie case of discrimination, the defendant must articulate a legitimate non-discriminatory reason for the dismissal.  The plaintiff must then provide evidence a fact-finder could reasonably disbelieve the employer's articulated legitimate reasons, or believe an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  The inquiry ends with the prima facie case in this instance, however, because Westfall resigned and was not fired.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981)

*Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). The record is clear Westfall was over 40 years of age, was qualified for her job, and was replaced by someone sufficiently younger.

Westfall contends the adverse employment action for both her ADEA and ADA claims was a constructive discharge. An adverse employment action is "one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Westfall alleges her resignation was forced due to intolerable conditions at Vanguard which constituted a constructive discharge. For a constructive discharge claim under the ADA, ADEA, or PHRA to survive summary judgment, Westfall must establish Vanguard knowingly permitted a condition so intolerable a reasonable person would have felt compelled to resign. *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir. 1988); *see Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998). Westfall's mid-year review is the only evidence she can offer to corroborate the alleged intolerable conditions at Vanguard. A performance evaluation, even if completely negative, is not a condition so intolerable a reasonable person would feel compelled to resign. *See, e.g., Acosta v. Catholic Health Initiatives, Inc.*, No. CIV. A. 02-1750, 2003 WL 176978, at *15 (E.D. Pa. Jan. 24, 2003) (finding there was no constructive discharge where an employee received suggestions for improvement in his performance evaluation). Contrary to Westfall's assertion the review was motivated by animus on account of her age and disability, the performance review described what and how to improve. "As a matter of law, an employee's decision to resign rather than [make necessary improvements] can only be described as being voluntary." *Id.*; *cf. Gray v. New York*

(finding in part the prima facie case denotes the establishment of a legally mandatory rebuttable presumption without which the case cannot proceed). Westfall has failed to show evidence of any animus on account of her age including no evidence of derogatory comments of discriminatory decisions.

*Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (finding "the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge"). While "an employee is protected from a calculated effort to pressure her into resignation by the imposition of unreasonably harsh conditions in excess of those faced by her coworkers," there is no guarantee of "a working environment free from stress." *Id.*, at 1083. Considering Westfall has produced no other evidence of an adverse employment decision, her ADA, ADEA and PHRA claims all fail.

Westfall has not presented any evidence suggesting she was subjected to conditions so intolerable a reasonable person would have felt compelled to resign. She has offered no evidence supporting her claims of age and disability discrimination. Even when all the evidence and inferences are viewed in the light most favorable to Westfall, I conclude no reasonable jury could find Westfall experienced conditions so intolerable a reasonable person in her position would feel compelled to resign. In light of the failure of her age and disability discrimination claims, her retaliation and aiding and abetting claims also fail.[8] For the foregoing reasons, I will grant judgment in favor of Vanguard and O'Donnell pursuant to Rule 56.

An appropriate order follows.

---

[8]To survive summary judgment in a claim for retaliation, the plaintiff must produce evidence (1) the employee engaged in a protected activity, (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity, and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Farrell v. Plainters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). In light of Westfall's failure to produce evidence of an adverse employment action to satisfy the prima facie burden of production for her age and disability discrimination claims, her retaliation claim under the ADA, ADEA and PHRA fails as well.